| Image ID: | SUMMONS | |
|---|---|---|
| D00001907D72 | | Doc. No.   1907 |

IN THE DISTRICT COURT OF Chase COUNTY, NEBRASKA
Chase County Courthouse
PO Box 1299
Imperial          NE 69033 1299


FRENCHMAN VALLEY PRODUCE, INC. v. INDIANA INSURANCE COMPANY

Case ID: CI 13          37


TO:  THE PINNACLE AGENCY, LLC



You have been sued by the following plaintiff(s):

    FRENCHMAN VALLEY PRODUCE, INC.




Plaintiff's Attorney:    Randy Fair
Address:                 P. O. Box 59
                         Ogallala, NE 69153

Telephone:               (308) 284-6062

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  DECEMBER 27, 2013    BY THE COURT:    Debra K. Clark
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        THE PINNACLE AGENCY, LLC
        702 B Ave.
        Central City, NE 68826

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.


**EXHIBIT 1**

IN THE DISTRICT COURT OF CHASE COUNTY, NEBRASKA

| | |
|---|---|
| FRENCHMAN VALLEY PRODUCE, INC,<br>a Nebraska Corporation, | CASE NO. CI 13- |
| Plaintiff, | |
| v. | |
| INDIANA INSURANCE COMPANY,<br>MEMBER OF LIBERTY MUTUAL<br>GROUP, and | COMPLAINT |
| LIBERTY MUTUAL COMMERICAL<br>INSURANCE, and | |
| THE PINNACLE AGENCY LLC, , | |
| Defendants. | |

COMES NOW, the Plaintiff, FRENCHMAN VALLEY PRODUCE, INC. (hereinafter "Frenchman"), a Nebraska Corporation, by and through its attorney, Randy Fair of Dudden & Fair, PC, LLO, for its Complaint as insured's against Defendants, INDIANA INSURANCE COMPANY, MEMBER OF LIBERTY MUTUAL GROUP, (hereinafter Indiana Insurance) and LIBERTY MUTUAL COMMERCIAL INSURANCE (hereinafter Liberty) and THE PINNACLE AGENCY, LLC (hereinafter Pinnacle), and alleges and complains as follows:

## I. INTRODUCTORY STATEMENT

1.      Plaintiff claims and Defendants dispute that Plaintiff is entitled to receive reimbursement for damages to the metal roofing of their office and warehouse facility in Imperial, Chase County, Nebraska. The damage is due to a severe thunderstorm on or about June 19, 2011, that caused both wind and/or hail damage. Defendants refuse to reimburse for the full damage cost of the facility and make claim that the policy does not require reimbursement for functional damage. Defendants have abandoned Plaintiff in the face of the insurance coverage as required under their own policy.

1

## II. PARTIES

2.      Plaintiff, FRENCHMAN VALLEY PRODUCE, INC, (hereinafter "Frenchman") a Nebraska Corporation, is an entity formed and organized under the laws of Nebraska with a primary business in Chase County, Nebraska specifically located at 900 E Hwy 6, P.O. Box 879, Imperial, Chase County, Nebraska.

3.      Defendant, INDIANA INSURANCE COMPANY, MEMBER OF LIBERTY MUTUAL GROUP, (hereafter "Indiana Insurance") is a subsidiary of Liberty Mutual Agency Corporation, and is authorized to do and does business in Nebraska. Indiana Insurance's corporate headquarters are located at N19 W24130, Riverwood Drive, Waukesha, WI 53188. Indiana Insurance provides the insurance coverage for Plaintiffs that is the subject of this lawsuit.

4.      Defendant, LIBERTY MUTUAL COMMERICIAL INSURANCE, hereafter "Liberty") is a commercial lines insurance carrier and a member of Liberty Mutual Group, Inc., and is authorized to do and does business in Nebraska. Liberty has an address of 350 E 96th Street, Indianapolis, IN 46240.

5.      Defendant, THE PINNACLE AGENCY, LLC, (hereafter "Pinnacle") is an agent for Indiana Insurance and a member of the Liberty Mutual Group Inc., and is authorized to do and does business in Nebraska. Pinnacle has a registered agent address of 702 B Ave., Central City, NE 68826.

6.      All Defendants are named because Plaintiff is informed and believe that specifically Indiana Insurance is responsible, in whole or in part, for the bad faith coverage analyses and decisions that resulted in the failure of Defendants to provide full coverage under the policy and that Plaintiff has suffered resulting damages as alleged herein.

## III. JURISDICTION AND VENUE

7.      Jurisdiction exists with the Chase County District Court. Plaintiff and the subject real estate are located in Chase County, Nebraska. The property damages occurred to the subject real estate in Chase County, Nebraska.

8.      All defendants have submitted to personal jurisdiction in Nebraska and specifically Chase County, Nebraska for the reasons that they have regularly systematically and continuously conducted insurance business in the state of Nebraska specifically Chase County, Nebraska. The claims asserted herein specifically and directly arose a substantial part from the

2

Defendants' business activities directed to and occurring in this County, including but not limited to its provision and sale of insurance to Plaintiff, who are domiciled, do business therein, and reside in this County. Defendants were paid and received premiums from the Plaintiff and accepted said premiums from the Plaintiff who maintain offices and business in this County, from which the insurance claims at issues here arose in substantial part.

9.     Venue is proper because a substantial part of the events giving rise to the claims asserted herein took place in Chase County, Nebraska. Plaintiff, who is the primarily named insured, has been and is at all relative times located in Chase County and carried on its business in Chase County. The facts and circumstances giving rise to this action occurred in substantial part in Chase County, Nebraska.

10.     The matter and controversy exceeds the sum of jurisdiction in Chase County Court.

### IV. AGENCY, ALTER EGO, AND JOINT VENTURE ALLEGATIONS

11.     Each of the Defendants was an agent, partner, joint venturer, co-conspirator or alter ego of each of the remaining Defendants and, in doing the acts hereinafter alleged, was acting within the scope of its authority as such and with the permission and consent of each of the remaining Defendants.

12.     Every Defendant, and each of them, instigated, encouraged, promoted, aided and abetted, and/or rendered substantial assistance to the wrongdoing alleged herein, with knowledge of the wrong and the role that each Defendant played in it. Every Defendant, and each of them, conspired to commit that wrongdoing which is alleged herein to have been intentional, with knowledge of the wrongful purpose of the wrongdoing, by and in contravention of their duties, actively participating in the wrongdoing, failing to stop or prevent the wrongdoing from occurring or continuing, and/or actively participating in the concealment and non-disclosure of the wrongdoing.

13.     Defendants issued the insurance policy to Plaintiff as the named insured under policy number CP2644839 for the effective dates of February 1, 2011 to February 1, 2012. The policy includes coverage for property damage where there is a result of hail and/or wind damage.

3

## V. STATEMENT OF FACTS

1.     On or about June 19, 2011, a series of thunderstorms occurred in and near Imperial, Nebraska. As documented by the National Oceanic and Atmospheric Administration (NOAA), the following storms were reported: On 6/19/2011 at 6:02 p.m., hail estimated at 2.75 inches in diameter was reported at a location 10 miles WNW of Imperial, Nebraska; On 6/19/2011 at 9:23 p.m., a wind gust of 77 mph was reported in Imperial, Nebraska; and on 6/19/2011 at 10:35 p.m., hail estimated at 1.75 inches in diameter was reported in Imperial, Nebraska.

2.     The high wind and hail on or about June 19, 2011, caused damage to the office and warehouse facility of Frenchman Valley Produce in Imperial, Nebraska.

3.     On or about July 21, 2011, Michael E. Gardner of Wiss, Janney, Elstner Associates, Inc. (WJE) performed a visual inspection of the Frenchman Valley Produce office and warehouse facility.

4.     WJE observed the interior and exterior structure and states the metal panel roofing on this building is not only the weather resistive barrier for the building, but also the structural diaphragm. The panels are a single layer that must be impervious to moisture penetration. These panels are held in place by fasteners, and water resistance is provided by compressing the panels together using fasteners with gaskets and sealant between the overlapping panels. As this type of roofing system ages, it becomes high maintenance due to the deterioration of sealant and gasket materials and separation of the compression seal between the panels.

5.     WJE observed dents in the metal panels that appear to be from hailstones associated with the recent storms.

6.     On or about September 1, 2011, Michael E. Gardner of Wiss, Janney, Elstner Associates, Inc. (WJE) performed a second a visual inspection of the Frenchman Valley Produce office and warehouse facility.

7.     The observations noted by WJE following the September visit are as follows:

7.1     Warehouse Building has dents in the metal roof surface, which are consistent with hail strikes, were found throughout the roof surfaces.

7.2     Warehouse Building gutter along the eaves edges of the buildings exhibit denting that is consistent with hail strikes.

4

7.3    Warehouse Building rake metal at the east and west edges of the building exhibit denting that is consistent with hail strikes.

7.4    Main Building gutter along the eaves at the east end of the building exhibits denting that is consistent with hail strikes.

7.5    Main Building rake metal at the west edge of the building exhibits denting that is consistent with hail strikes.

7.6    In addition to dents observed on the top surface of the metal roofing, denting of the gutters and rake edge metal were observed. The denting was most visible on the south gutter sections and the west rake edge sections, yet, denting was observed at the north gutter and east rake edge sections as well. The gutters at the east end of the building and the west rake edge metal also exhibited denting.

8.    Plaintiff Frenchman has policy coverage including actual cash value policy coverage relating to replacement cost and actual value with regard to damages resulting from hail and other storm damage.

9.    On or about November 11, 2011, the Defendants began declining the claim. The main argument for denying the claim is based upon their distinction as to whether the damage is cosmetic versus structural/functional.

10.    There is no policy exemption regarding cosmetic versus structural/functional damage.

11.    The Defendants have denied the full extent of the claim, continue to deny full coverage for the loss and continue to draw a distinction between functional versus cosmetic damage even though no such distinction or exemption is in the policy.

12.    Coverage under the policy only requires that physical damage is needed to collect for loss and property damage. Therefore cosmetic damage is physical damage and recoverable under a property loss policy.

13.    Alterations to the physical appearance of a structure or personal property are covered so long as the cause is a covered peril. Whether or not the dents are cosmetic or affect the roof structure, they are still direct physical loss.

14.    The policy does not exclude cosmetic damage so direct damage, even if it is cosmetic is covered. The principal of indemnity is to restore the insurer to what they had before the loss, and this insured had a roof with no dents.

5

15.    Defendants have the ability and opportunity that if they wanted to exclude cosmetic damage then they should have engaged in issuing policies with cosmetic damage endorsement or exclusions. Cosmetic damage exclusions applicable would need to be specifically spelled out that exclusion is not present in the policy of insurance provided to the plaintiff.

16.    Defendants have continued to pay the amounts as required under the policy. Even in light of Defendant's initial adjustor determination as to the reimbursable amount necessary to make the Plaintiff whole, the Defendants have refused to pay.

17.    Defendants have assigned other adjustors to examine the property until they could claim that the damage value is only as to functional damage. However, such examination did not include interior leakage from the buildings roofs and the examination was not thorough.

18.    Defendants continue to fail to abide by their policy and wrongfully deny Plaintiff's claims.

## FIRST CAUSE OF ACTION
### (Bad Faith)

19.    Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

20.    By denying the claims for payment of benefits submitted by Plaintiff Frenchman, the Defendants breached the terms of the insurance policy contract entered into between Plaintiff and Defendants.

21.    Defendants have wrongfully denied and breached their coverage obligations. Defendants have continued to refuse reimburse for the amount of the losses suffered by the Plaintiff

22.    Defendant's abandonment of Plaintiff based upon its coverage analysis was and is being undertaken in bad faith, without proper or reasonable grounds, and with intentional and/or reckless disregard of contractual and statutory rights and interests.

23.    Defendants have breached the insurance policy willfully and in bad faith.

24.    Defendant's policy and coverage requires them to pay for the resulting physical damages, but here Defendants' claim is an attempt to impose a requirement that any damage not

be just cosmetic or slightly necessary but that every bit of damage be some sort of overwhelming functional damage in order for any payments to be forthcoming.

25.    The policy language is quite clear that this is a covered loss because the damage is due to hail and that as a result of the hail damage that the claim arising out of the damage should be fully paid in accordance with the policy.

26.    Before denying coverage or limiting coverage, Defendants are obligated to make a thorough, good faith, and diligent investigation and inquiry, including seeking appropriate consultation, before determining that there was no potential or possibility of limiting payment or coverage for the claims asserted in this manner.

27.    Defendants are obligated to resolve any doubt about the possibility or potential of coverage in favor of the Plaintiff.

28.    Indiana Insurance and the other Defendants have turned these duties on their head, denying coverage based on an incomplete and superficial investigation and analysis of the policy language.

29.    Thus, in handling, investigating and adjusting Plaintiff's claims Indiana Insurance and all other Defendants have systematically, methodically and generally engaged in the following improper, unfair and unreasonable claims practices directed at Plaintiff:

a)    Deliberately, unjustifiably and unreasonably withheld the benefits Plaintiff were entitled to receive;

b)    Deliberately, unjustifiably and unreasonably adopted an unwarranted interpretation and application of the provisions and exclusions of the Policy, contrary to the facts presented them by Plaintiff and otherwise readily ascertainable upon reasonable investigation and inquiry by legal minds, so as to limit Defendants' own financial exposure and contractual obligations and to maximize its profits at Plaintiff's expense;

c)    Unreasonably and refusing to provide documents and photographs to Plaintiff in furtherance of their inappropriate and bath faith actions;

d)    Denying coverage without seeking independent legal opinion concerning the insurers' duties and obligations from a qualified attorney;

e)    Failing to protect Plaintiff's reasonable expectations of coverage, including but not limited to refusing to timely, promptly, and without delay, pay for the appropriate and full

repairs for the property damage caused to Plaintiff's property, thereby knowingly and intentionally causing extreme hardship to Plaintiff;

f)      Failing to give Plaintiff's interests at least as much consideration as its own in evaluating the policy and coverage;

g)      Deliberately, unjustifiably and unreasonably failing to adopt and implement reasonable standards for the prompt processing of Plaintiff's claim, all the while knowing and/or hoping that Plaintiff would be unable to pursue the full benefits of these insurance policies or would become frustrated with pursuing the full benefits of the Policy and abandon its claims;

h)      Deliberately, unjustifiably and unreasonably refusing to attempt in good faith to make a prompt, fair and equitable settlement of the claims of the Plaintiff.

i)      Deliberately, unjustifiably and unreasonably failing to communicate promptly with Plaintiff, thereby causing Plaintiff to have to pursue legal matters;

j)      Deliberately, unjustifiably and unreasonably compelling Plaintiff to secure attorneys at considerable cost in an attempt to cause Plaintiff to incur additional attorneys' fees so as to become frustrated and financially crippled so that they would not pursue the full benefits of the insurance policies;

k)      Deliberately, unjustifiably and unreasonably compelling Plaintiff to institute litigation to recover amounts due under the insurance policies in an effort to further discourage Plaintiff from pursuing the full policy benefits; and

l)      Deliberately, unjustifiably and unreasonably refusing to reconsider their denial of coverage despite their lack of reasonable or diligent investigation and analysis regarding the bases for such coverage and claims, and despite having received from Plaintiff information that established more than sufficient grounds to conclude that coverage existed and continue to exist under the Policy without a distinction between functional and cosmetic damage.

30.     Defendants carried out the above-described actions with a conscious disregard for Plaintiff's rights and interests. These actions constitute conduct which is despicable behavior executed with intent to injure Plaintiff, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive damages.

31.     As a result of Defendants' bad faith denial of its coverage obligations to Plaintiff, Plaintiff has been forced to hire counsel and, in doing so, have incurred crushing costs and

8

attorneys' fees as well as suffering emotional and financial stress as result of the actions of the insurance company.

32.     As a result of the actions of the Defendants, Plaintiff cannot readily and easily obtain insurance coverage from another company as this particular claim is noted as an open claim throughout all insurance company records and documents thereby restricting their ability to receive funds elsewhere.

33.     As a result of Plaintiff's inability to pursue insurance elsewhere, Plaintiff continues to have resulting damages and issues because of Defendants bad faith denial of its coverage obligation.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

34.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

35.     Defendants by and through their policy promise to reimburse Plaintiff for any property damages and losses. Plaintiff paid significant premiums to Defendant to obtain the property damage coverage. Plaintiff has provided proper notice to Defendants for the losses, and in all other respects complied with each and every obligation required to be performed by Plaintiff under the policy.

36.     Despite Plaintiff's complete performance, Defendants breached the terms of the Policy by failing to provide Plaintiff with property coverage. Defendants have failed to properly reimburse or even agree to reimburse Plaintiff for their property damages despite their contractual obligations under the Policy.

37.     By virtue of their status as principal, alter ego, and joint venturer in a common enterprise to wrongfully pay the policy and provide property coverage to its insured in this jurisdiction, all Defendants responsible for the breach of the property claim in violation of the contract.

38.     As a direct and proximate result of Defendants' total and material breach of the Policy, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages.

## THIRD CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing)

39.    Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

40.    Plaintiff, by and through its officers and directors, purchased the Policy from Defendants with the understanding and expectation that Defendants would act in good faith and deal fairly pursuant to the Policy and the obligations created there under.

41.    The Policy issued by the Defendants to Plaintiffs contained an implied covenant that neither party would do anything to deprive the other party of the benefits of the Policy. The implied covenant also obligated Defendants to act in good faith with regard to their dealings with Plaintiffs, giving Plaintiffs' interests at least as much consideration as their own.

42.    Defendants' refusal to pay the property damage claim has been unreasonable, without proper investigation, and without proper justification. Their refusal to pay the property damages demonstrates a failure or refusal to discharge a known and obvious contractual responsibility; and it was prompted not by an honest mistake, bad judgment, advice of counsel, or mere negligence, but rather by a conscious and deliberate act, which unfairly frustrated an agreed-upon purpose of the Policy and disappointed their insured's reasonable expectations, thereby depriving Plaintiffs of the bargained-for benefits of the Policy.

43.    Defendants' refusal to pay was also unreasonable and without proper cause because it was made without a proper investigation, or outside determination of the policy, but instead was predicated on a distinction that is not contained with the policy and when challenged on the denial predicated on an unreasonable and superficial reading of select provisions of Policy.

44.    Plaintiffs are informed and believe and based thereon allege that Defendants did not request the advice of counsel before refusing to pay as required under their policy. In the absence of any reasonable basis for doing so, and with full knowledge and/or reckless disregard for the consequences to be borne by its insured, Defendants have failed and refuse to properly consider the full extent of the property damage to Plaintiffs under the Policy of insurance issued by Defendants for damages in addition to costs and attorneys' fees occasioned by the need to file this litigation.

10

45.     Plaintiffs are informed and believe and based thereon allege that Defendants engaged in, and continues to engage in, a course of conduct to further its own economic interests in direct violation of their obligations to Plaintiffs. This conduct includes, but is not limited to the conduct described above.

46.     As a result of Defendants' wrongful conduct, Plaintiff has not been reimbursed by their property losses.

47.     As a further result of Defendants' aforementioned wrongful conduct, Plaintiff has suffered additional harm, expense, costs and attorneys' fees as well as other damage in an amount to be proven at trial.

48.     Defendants' conduct described herein was undertaken by its officers or managing agents, who are responsible for Defendants' general management and operations and including, but not limited to, claims supervision and operation, underwriting, communications and decisions. The aforementioned conduct of these managing agents and individuals was therefore undertaken on behalf of Defendants and with conscious disregard for Plaintiff's contractual and other rights. Defendants further had advance knowledge of the action and conduct of these individuals whose actions and conduct were ratified, authorized and approved by said managing agents whose precise identities are unknown to Plaintiff at this time.

49.     As a direct and proximate result of Defendants' breach of the implied duty of good faith and fair dealing and their total and material breach of the Policy, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, as well as related expenses in an amount not yet fully ascertained.

50.     The conduct described herein constitutes "oppression, fraud or malice" and Plaintiff is therefore entitled to punitive damages in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

### (Tortious Interference with Contract)

51.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

52.     The Policy is a valid and existing insurance contract between Plaintiff and Defendants. Defendants knew of the existence of the Policy and engaged in an inadequate investigation, analysis and review of the Policy and made denials without good reason and in a

11

manner designed to deny Plaintiff the property damage insurance coverage to which they were entitled under the Policy.

53.     The events have therefore acted in a manner to cause their underwriting company and agents and have usurped the claims adjustment, investigation and analysis function that Pinnacle Agency, Indiana Insurance and the other Defendants should have and that they are required to reasonably conduct under the Policy. Their actions and domination of the underwriting companies have caused it to breach the Policy by deliberately, unjustifiably and unreasonably withholding benefits, by adopting an unwarranted interpretation and application of the provisions and exclusions of the Policy, contrary to the facts and by failing to protect Plaintiff's reasonable expectations of coverage, including but not limited to refusing to timely, promptly, and without delay, pay for the property damage to Plaintiff thereby knowingly and intentionally causing extreme hardship to Plaintiff.

54.     Defendants have also deliberately, unjustifiably and unreasonably refused to attempt in good faith to make a prompt and equitable settlement of the claims under the Policy. Defendants have deliberately, unjustifiably and unreasonably failed to communicate promptly with Plaintiff.

55.     Defendants have deliberately, unjustifiably and unreasonably failed to provide documents, pictures, reports that have been used to make decisions in the matter thereby causing Plaintiff continued loss and hardship as well as causing Plaintiff to undertake this litigation.

56.     Defendants have also deliberately, unjustifiably and unreasonably compelled Plaintiff to institute litigation to recover amounts due under the insurance policies in an effort to further discourage Plaintiff from pursuing the full policy benefits; and Defendants have deliberately, unjustifiably and unreasonably refusing to reconsider their denial of coverage despite their lack of reasonable or diligent investigation and analysis regarding the bases for such coverage, and despite having received from Plaintiff information that established more than sufficient grounds to conclude that full coverage existed and continue to exist under the Policy.

57.     In interfering with Plaintiff's contractual relationship with Pinnacle Agency, the parent company, Liberty Mutual Insurance and Indiana Insurance, did not act for the sole purpose of protecting its legitimate business interest from being prejudiced. Rather, it acted for the illegitimate business purpose of reaping illicit gains due to its bad faith effort to cause Pinnacle Agency and the other Defendants to deny the insurance benefits to which Plaintiff was

entitled. It did not employ proper means to do so, but instead employed wrongful means of involving itself in the claims adjustment processes of its subsidiary and has acted in the express purpose and design of causing a breach of its obligations under the Policy it issued to Plaintiff. Liberty Mutual Insurance and Indiana Insurance therefore have directly caused and continue to cause a breach of its Policy obligations to its insureds, and have disrupted and harmed the contractual relationship between insurer and insureds that properly should exist under and by the terms and conditions of the Policy.

58.     As a direct and proximate result of Indiana Insurance and Liberty Mutual's tortious interference with Defendants' insurance contract with Plaintiff, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, as well as related expenses in an amount not yet fully ascertained.   The conduct described herein constitutes oppression, fraud or malice therefore Plaintiff is entitled to punitive damages in an amount to be proven at court.

## FIFTH CAUSE OF ACTION

### (Unlawful, Unfair, or Fraudulent Business Act or Practice)

59.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

60.     Plaintiff is informed and believe and based thereon allege that the Defendants, in concert with its subsidiaries, has a bad faith corporate practice of withholding property damage policy benefits which Defendants know are due to their insureds. Defendants engage in this practice on the theory that, if an insurer denies most of their claims, the majority of insureds will abandon their claims after the denial, or take a lesser amount in settlement of the claims, rather than take on the prospect of litigating against their insurer. Defendants engage in this corporate practice in order to discourage claims and maximize profits.

61.     Defendants have engaged in unfair insurance practices and made it a pervasive part of their well-established, overall business plan. Defendants have therefore engaged in unlawful, unfair or fraudulent business act or practice, by their activities and their decision to discourage the pursuit of property damage claim.

13

62.     Defendants have been unjustly enriched in an amount as yet is unascertained, which will be determined according to proof at trial, but which includes their ill-gotten receipt from Plaintiffs based upon their payments of the Policy premium.

63.     Plaintiff has suffered concrete and substantial monetary harm directly as a result of defendants' conduct, including attorneys' fees as well as emotional and financial stress.

64.     Defendants' practice of denying this property claim offends established public policy, is immoral, unethical, oppressive, unscrupulous and so substantially injurious to consumers such as to constitute an unfair business practice. Plaintiff has suffered losses and request to be reimbursed in an amount to be proven at trial.

### Demand for Jury Trial

65.     Plaintiffs demand a trial by jury.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this court enter a judgment for the Plaintiff and against the Defendants and find that they were negligent, have breached contractual relationship, and that Defendants have engaged in bad faith bargaining, and finds that the Plaintiff should be awarded financial compensation in the following manner:

a.     Award actual and compensatory damages;

b.     Award punitive and exemplary damage;

b.     Award pre-judgment interest award of damages from the date of breach;

c.     Award post-judgment interest;

d.     Award attorney fees and costs; and

e.     For such other and further relief as this court deems just and proper.

FRENCHMAN VALLEY PRODUCE, INC.
A Nebraska Corporation, Plaintiff


/ s / Randy Fair
RANDY FAIR, #22351
Dudden & Fair, PC, LLO
PO Box 60 – 914 East A Street
Ogallala, NE 69153
308.284.6061 – 308.284.2648 fax


14

| Image ID:<br>D00001905D72 | **SUMMONS** | Doc. No. | 1905 |

IN THE DISTRICT COURT OF Chase COUNTY, NEBRASKA
                        Chase County Courthouse
                        PO Box 1299
                        Imperial            NE 69033 1299


FRENCHMAN VALLEY PRODUCE, INC. v. INDIANA INSURANCE COMPANY

                                            Case ID: CI 13      37


TO:  INDIANA INSURANCE COMPANY



You have been sued by the following plaintiff(s):

      FRENCHMAN VALLEY PRODUCE, INC.




Plaintiff's Attorney:    Randy Fair
Address:                 P. O. Box 59
                         Ogallala, NE 69153

Telephone:               (308) 284-6062

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:   DECEMBER 27, 2013      BY THE COURT:    Debra K. Clark
                                                    Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

          INDIANA INSURANCE COMPANY
          N19 W24130, Riverwood Drive
          Waukesha, WI 53188

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

IN THE DISTRICT COURT OF CHASE COUNTY, NEBRASKA

| | |
|---|---|
| FRENCHMAN VALLEY PRODUCE, INC, )<br>a Nebraska Corporation, ) | CASE NO. CI 13- |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INDIANA INSURANCE COMPANY, )<br>MEMBER OF LIBERTY MUTUAL )<br>GROUP, and ) | COMPLAINT |
| ) | |
| LIBERTY MUTUAL COMMERICAL )<br>INSURANCE, and ) | |
| ) | |
| THE PINNACLE AGENCY LLC, , ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW, the Plaintiff, FRENCHMAN VALLEY PRODUCE, INC. (hereinafter "Frenchman"), a Nebraska Corporation, by and through its attorney, Randy Fair of Dudden & Fair, PC, LLO, for its Complaint as insured's against Defendants, INDIANA INSURANCE COMPANY, MEMBER OF LIBERTY MUTUAL GROUP, (hereinafter Indiana Insurance) and LIBERTY MUTUAL COMMERCIAL INSURANCE (hereinafter Liberty) and THE PINNACLE AGENCY, LLC (hereinafter Pinnacle), and alleges and complains as follows:

## I. INTRODUCTORY STATEMENT

1.      Plaintiff claims and Defendants dispute that Plaintiff is entitled to receive reimbursement for damages to the metal roofing of their office and warehouse facility in Imperial, Chase County, Nebraska. The damage is due to a severe thunderstorm on or about June 19, 2011, that caused both wind and/or hail damage. Defendants refuse to reimburse for the full damage cost of the facility and make claim that the policy does not require reimbursement for functional damage. Defendants have abandoned Plaintiff in the face of the insurance coverage as required under their own policy.

1

## II. PARTIES

2.     Plaintiff, FRENCHMAN VALLEY PRODUCE, INC, (hereinafter "Frenchman") a Nebraska Corporation, is an entity formed and organized under the laws of Nebraska with a primary business in Chase County, Nebraska specifically located at 900 E Hwy 6, P.O. Box 879, Imperial, Chase County, Nebraska.

3.     Defendant, INDIANA INSURANCE COMPANY, MEMBER OF LIBERTY MUTUAL GROUP, (hereafter "Indiana Insurance") is a subsidiary of Liberty Mutual Agency Corporation, and is authorized to do and does business in Nebraska. Indiana Insurance's corporate headquarters are located at N19 W24130, Riverwood Drive, Waukesha, WI 53188. Indiana Insurance provides the insurance coverage for Plaintiffs that is the subject of this lawsuit.

4.     Defendant, LIBERTY MUTUAL COMMERICIAL INSURANCE, hereafter "Liberty") is a commercial lines insurance carrier and a member of Liberty Mutual Group, Inc., and is authorized to do and does business in Nebraska. Liberty has an address of 350 E 96th Street, Indianapolis, IN 46240.

5.     Defendant, THE PINNACLE AGENCY, LLC, (hereafter "Pinnacle") is an agent for Indiana Insurance and a member of the Liberty Mutual Group Inc., and is authorized to do and does business in Nebraska. Pinnacle has a registered agent address of 702 B Ave., Central City, NE 68826.

6.     All Defendants are named because Plaintiff is informed and believe that specifically Indiana Insurance is responsible, in whole or in part, for the bad faith coverage analyses and decisions that resulted in the failure of Defendants to provide full coverage under the policy and that Plaintiff has suffered resulting damages as alleged herein.

## III. JURISDICTION AND VENUE

7.     Jurisdiction exists with the Chase County District Court. Plaintiff and the subject real estate are located in Chase County, Nebraska. The property damages occurred to the subject real estate in Chase County, Nebraska.

8.     All defendants have submitted to personal jurisdiction in Nebraska and specifically Chase County, Nebraska for the reasons that they have regularly systematically and continuously conducted insurance business in the state of Nebraska specifically Chase County, Nebraska. The claims asserted herein specifically and directly arose a substantial part from the

2

Defendants' business activities directed to and occurring in this County, including but not limited to its provision and sale of insurance to Plaintiff, who are domiciled, do business therein, and reside in this County. Defendants were paid and received premiums from the Plaintiff and accepted said premiums from the Plaintiff who maintain offices and business in this County, from which the insurance claims at issues here arose in substantial part.

9.      Venue is proper because a substantial part of the events giving rise to the claims asserted herein took place in Chase County, Nebraska. Plaintiff, who is the primarily named insured, has been and is at all relative times located in Chase County and carried on its business in Chase County. The facts and circumstances giving rise to this action occurred in substantial part in Chase County, Nebraska.

10.     The matter and controversy exceeds the sum of jurisdiction in Chase County Court.

### IV. AGENCY, ALTER EGO, AND JOINT VENTURE ALLEGATIONS

11.     Each of the Defendants was an agent, partner, joint venturer, co-conspirator or alter ego of each of the remaining Defendants and, in doing the acts hereinafter alleged, was acting within the scope of its authority as such and with the permission and consent of each of the remaining Defendants.

12.     Every Defendant, and each of them, instigated, encouraged, promoted, aided and abetted, and/or rendered substantial assistance to the wrongdoing alleged herein, with knowledge of the wrong and the role that each Defendant played in it. Every Defendant, and each of them, conspired to commit that wrongdoing which is alleged herein to have been intentional, with knowledge of the wrongful purpose of the wrongdoing, by and in contravention of their duties, actively participating in the wrongdoing, failing to stop or prevent the wrongdoing from occurring or continuing, and/or actively participating in the concealment and non-disclosure of the wrongdoing.

13.     Defendants issued the insurance policy to Plaintiff as the named insured under policy number CP2644839 for the effective dates of February 1, 2011 to February 1, 2012. The policy includes coverage for property damage where there is a result of hail and/or wind damage.

3

## V. STATEMENT OF FACTS

1.      On or about June 19, 2011, a series of thunderstorms occurred in and near Imperial, Nebraska. As documented by the National Oceanic and Atmospheric Administration (NOAA), the following storms were reported: On 6/19/2011 at 6:02 p.m., hail estimated at 2.75 inches in diameter was reported at a location 10 miles WNW of Imperial, Nebraska; On 6/19/2011 at 9:23 p.m., a wind gust of 77 mph was reported in Imperial, Nebraska; and on 6/19/2011 at 10:35 p.m., hail estimated at 1.75 inches in diameter was reported in Imperial, Nebraska.

2.      The high wind and hail on or about June 19, 2011, caused damage to the office and warehouse facility of Frenchman Valley Produce in Imperial, Nebraska.

3.      On or about July 21, 2011, Michael E. Gardner of Wiss, Janney, Elstner Associates, Inc. (WJE) performed a visual inspection of the Frenchman Valley Produce office and warehouse facility.

4.      WJE observed the interior and exterior structure and states the metal panel roofing on this building is not only the weather resistive barrier for the building, but also the structural diaphragm. The panels are a single layer that must be impervious to moisture penetration. These panels are held in place by fasteners, and water resistance is provided by compressing the panels together using fasteners with gaskets and sealant between the overlapping panels. As this type of roofing system ages, it becomes high maintenance due to the deterioration of sealant and gasket materials and separation of the compression seal between the panels.

5.      WJE observed dents in the metal panels that appear to be from hailstones associated with the recent storms.

6.      On or about September 1, 2011, Michael E. Gardner of Wiss, Janney, Elstner Associates, Inc. (WJE) performed a second a visual inspection of the Frenchman Valley Produce office and warehouse facility.

7.      The observations noted by WJE following the September visit are as follows:

7.1     Warehouse Building has dents in the metal roof surface, which are consistent with hail strikes, were found throughout the roof surfaces.

7.2     Warehouse Building gutter along the eaves edges of the buildings exhibit denting that is consistent with hail strikes.

4

7.3     Warehouse Building rake metal at the east and west edges of the building exhibit denting that is consistent with hail strikes.

7.4     Main Building gutter along the eaves at the east end of the building exhibits denting that is consistent with hail strikes.

7.5     Main Building rake metal at the west edge of the building exhibits denting that is consistent with hail strikes.

7.6     In addition to dents observed on the top surface of the metal roofing, denting of the gutters and rake edge metal were observed. The denting was most visible on the south gutter sections and the west rake edge sections, yet, denting was observed at the north gutter and east rake edge sections as well. The gutters at the east end of the building and the west rake edge metal also exhibited denting.

8.     Plaintiff Frenchman has policy coverage including actual cash value policy coverage relating to replacement cost and actual value with regard to damages resulting from hail and other storm damage.

9.     On or about November 11, 2011, the Defendants began declining the claim. The main argument for denying the claim is based upon their distinction as to whether the damage is cosmetic versus structural/functional.

10.    There is no policy exemption regarding cosmetic versus structural/functional damage.

11.    The Defendants have denied the full extent of the claim, continue to deny full coverage for the loss and continue to draw a distinction between functional versus cosmetic damage even though no such distinction or exemption is in the policy.

12.    Coverage under the policy only requires that physical damage is needed to collect for loss and property damage. Therefore cosmetic damage is physical damage and recoverable under a property loss policy.

13.    Alterations to the physical appearance of a structure or personal property are covered so long as the cause is a covered peril. Whether or not the dents are cosmetic or affect the roof structure, they are still direct physical loss.

14.    The policy does not exclude cosmetic damage so direct damage, even if it is cosmetic is covered. The principal of indemnity is to restore the insurer to what they had before the loss, and this insured had a roof with no dents.

5

15.    Defendants have the ability and opportunity that if they wanted to exclude cosmetic damage then they should have engaged in issuing policies with cosmetic damage endorsement or exclusions. Cosmetic damage exclusions applicable would need to be specifically spelled out that exclusion is not present in the policy of insurance provided to the plaintiff.

16.    Defendants have continued to pay the amounts as required under the policy. Even in light of Defendant's initial adjustor determination as to the reimbursable amount necessary to make the Plaintiff whole, the Defendants have refused to pay.

17.    Defendants have assigned other adjustors to examine the property until they could claim that the damage value is only as to functional damage. However, such examination did not include interior leakage from the buildings roofs and the examination was not thorough.

18.    Defendants continue to fail to abide by their policy and wrongfully deny Plaintiff's claims.

## FIRST CAUSE OF ACTION

### (Bad Faith)

19.    Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

20.    By denying the claims for payment of benefits submitted by Plaintiff Frenchman, the Defendants breached the terms of the insurance policy contract entered into between Plaintiff and Defendants.

21.    Defendants have wrongfully denied and breached their coverage obligations. Defendants have continued to refuse reimburse for the amount of the losses suffered by the Plaintiff

22.    Defendant's abandonment of Plaintiff based upon its coverage analysis was and is being undertaken in bad faith, without proper or reasonable grounds, and with intentional and/or reckless disregard of contractual and statutory rights and interests.

23.    Defendants have breached the insurance policy willfully and in bad faith.

24.    Defendant's policy and coverage requires them to pay for the resulting physical damages, but here Defendants' claim is an attempt to impose a requirement that any damage not

6

be just cosmetic or slightly necessary but that every bit of damage be some sort of overwhelming functional damage in order for any payments to be forthcoming.

25.     The policy language is quite clear that this is a covered loss because the damage is due to hail and that as a result of the hail damage that the claim arising out of the damage should be fully paid in accordance with the policy.

26.     Before denying coverage or limiting coverage, Defendants are obligated to make a thorough, good faith, and diligent investigation and inquiry, including seeking appropriate consultation, before determining that there was no potential or possibility of limiting payment or coverage for the claims asserted in this manner.

27.     Defendants are obligated to resolve any doubt about the possibility or potential of coverage in favor of the Plaintiff.

28.     Indiana Insurance and the other Defendants have turned these duties on their head, denying coverage based on an incomplete and superficial investigation and analysis of the policy language.

29.     Thus, in handling, investigating and adjusting Plaintiff's claims Indiana Insurance and all other Defendants have systematically, methodically and generally engaged in the following improper, unfair and unreasonable claims practices directed at Plaintiff:

a)      Deliberately, unjustifiably and unreasonably withheld the benefits Plaintiff were entitled to receive;

b)      Deliberately, unjustifiably and unreasonably adopted an unwarranted interpretation and application of the provisions and exclusions of the Policy, contrary to the facts presented them by Plaintiff and otherwise readily ascertainable upon reasonable investigation and inquiry by legal minds, so as to limit Defendants' own financial exposure and contractual obligations and to maximize its profits at Plaintiff's expense;

c)      Unreasonably and refusing to provide documents and photographs to Plaintiff in furtherance of their inappropriate and bath faith actions;

d)      Denying coverage without seeking independent legal opinion concerning the insurers' duties and obligations from a qualified attorney;

e)      Failing to protect Plaintiff's reasonable expectations of coverage, including but not limited to refusing to timely, promptly, and without delay, pay for the appropriate and full

7

repairs for the property damage caused to Plaintiff's property, thereby knowingly and intentionally causing extreme hardship to Plaintiff;

 f) Failing to give Plaintiff's interests at least as much consideration as its own in evaluating the policy and coverage;

 g) Deliberately, unjustifiably and unreasonably failing to adopt and implement reasonable standards for the prompt processing of Plaintiff's claim, all the while knowing and/or hoping that Plaintiff would be unable to pursue the full benefits of these insurance policies or would become frustrated with pursuing the full benefits of the Policy and abandon its claims;

 h) Deliberately, unjustifiably and unreasonably refusing to attempt in good faith to make a prompt, fair and equitable settlement of the claims of the Plaintiff.

 i) Deliberately, unjustifiably and unreasonably failing to communicate promptly with Plaintiff, thereby causing Plaintiff to have to pursue legal matters;

 j) Deliberately, unjustifiably and unreasonably compelling Plaintiff to secure attorneys at considerable cost in an attempt to cause Plaintiff to incur additional attorneys' fees so as to become frustrated and financially crippled so that they would not pursue the full benefits of the insurance policies;

 k) Deliberately, unjustifiably and unreasonably compelling Plaintiff to institute litigation to recover amounts due under the insurance policies in an effort to further discourage Plaintiff from pursuing the full policy benefits; and

 l) Deliberately, unjustifiably and unreasonably refusing to reconsider their denial of coverage despite their lack of reasonable or diligent investigation and analysis regarding the bases for such coverage and claims, and despite having received from Plaintiff information that established more than sufficient grounds to conclude that coverage existed and continue to exist under the Policy without a distinction between functional and cosmetic damage.

 30. Defendants carried out the above-described actions with a conscious disregard for Plaintiff's rights and interests. These actions constitute conduct which is despicable behavior executed with intent to injure Plaintiff, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive damages.

 31. As a result of Defendants' bad faith denial of its coverage obligations to Plaintiff, Plaintiff has been forced to hire counsel and, in doing so, have incurred crushing costs and

8

attorneys' fees as well as suffering emotional and financial stress as result of the actions of the insurance company.

32.     As a result of the actions of the Defendants, Plaintiff cannot readily and easily obtain insurance coverage from another company as this particular claim is noted as an open claim throughout all insurance company records and documents thereby restricting their ability to receive funds elsewhere.

33.     As a result of Plaintiff's inability to pursue insurance elsewhere, Plaintiff continues to have resulting damages and issues because of Defendants bad faith denial of its coverage obligation.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

34.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

35.     Defendants by and through their policy promise to reimburse Plaintiff for any property damages and losses. Plaintiff paid significant premiums to Defendant to obtain the property damage coverage. Plaintiff has provided proper notice to Defendants for the losses, and in all other respects complied with each and every obligation required to be performed by Plaintiff under the policy.

36.     Despite Plaintiff's complete performance, Defendants breached the terms of the Policy by failing to provide Plaintiff with property coverage. Defendants have failed to properly reimburse or even agree to reimburse Plaintiff for their property damages despite their contractual obligations under the Policy.

37.     By virtue of their status as principal, alter ego, and joint venturer in a common enterprise to wrongfully pay the policy and provide property coverage to its insured in this jurisdiction, all Defendants responsible for the breach of the property claim in violation of the contract.

38.     As a direct and proximate result of Defendants' total and material breach of the Policy, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages.

9

### THIRD CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing)

39.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

40.     Plaintiff, by and through its officers and directors, purchased the Policy from Defendants with the understanding and expectation that Defendants would act in good faith and deal fairly pursuant to the Policy and the obligations created there under.

41.     The Policy issued by the Defendants to Plaintiffs contained an implied covenant that neither party would do anything to deprive the other party of the benefits of the Policy. The implied covenant also obligated Defendants to act in good faith with regard to their dealings with Plaintiffs, giving Plaintiffs' interests at least as much consideration as their own.

42.     Defendants' refusal to pay the property damage claim has been unreasonable, without proper investigation, and without proper justification. Their refusal to pay the property damages demonstrates a failure or refusal to discharge a known and obvious contractual responsibility; and it was prompted not by an honest mistake, bad judgment, advice of counsel, or mere negligence, but rather by a conscious and deliberate act, which unfairly frustrated an agreed-upon purpose of the Policy and disappointed their insured's reasonable expectations, thereby depriving Plaintiffs of the bargained-for benefits of the Policy.

43.     Defendants' refusal to pay was also unreasonable and without proper cause because it was made without a proper investigation, or outside determination of the policy, but instead was predicated on a distinction that is not contained with the policy and when challenged on the denial predicated on an unreasonable and superficial reading of select provisions of Policy.

44.     Plaintiffs are informed and believe and based thereon allege that Defendants did not request the advice of counsel before refusing to pay as required under their policy. In the absence of any reasonable basis for doing so, and with full knowledge and/or reckless disregard for the consequences to be borne by its insured, Defendants have failed and refuse to properly consider the full extent of the property damage to Plaintiffs under the Policy of insurance issued by Defendants for damages in addition to costs and attorneys' fees occasioned by the need to file this litigation.

10

45.     Plaintiffs are informed and believe and based thereon allege that Defendants engaged in, and continues to engage in, a course of conduct to further its own economic interests in direct violation of their obligations to Plaintiffs. This conduct includes, but is not limited to the conduct described above.

46.     As a result of Defendants' wrongful conduct, Plaintiff has not been reimbursed by their property losses.

47.     As a further result of Defendants' aforementioned wrongful conduct, Plaintiff has suffered additional harm, expense, costs and attorneys' fees as well as other damage in an amount to be proven at trial.

48.     Defendants' conduct described herein was undertaken by its officers or managing agents, who are responsible for Defendants' general management and operations and including, but not limited to, claims supervision and operation, underwriting, communications and decisions. The aforementioned conduct of these managing agents and individuals was therefore undertaken on behalf of Defendants and with conscious disregard for Plaintiff's contractual and other rights. Defendants further had advance knowledge of the action and conduct of these individuals whose actions and conduct were ratified, authorized and approved by said managing agents whose precise identities are unknown to Plaintiff at this time.

49.     As a direct and proximate result of Defendants' breach of the implied duty of good faith and fair dealing and their total and material breach of the Policy, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, as well as related expenses in an amount not yet fully ascertained.

50.     The conduct described herein constitutes "oppression, fraud or malice" and Plaintiff is therefore entitled to punitive damages in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

(Tortious Interference with Contract)

51.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

52.     The Policy is a valid and existing insurance contract between Plaintiff and Defendants. Defendants knew of the existence of the Policy and engaged in an inadequate investigation, analysis and review of the Policy and made denials without good reason and in a

11

manner designed to deny Plaintiff the property damage insurance coverage to which they were entitled under the Policy.

53.    The events have therefore acted in a manner to cause their underwriting company and agents and have usurped the claims adjustment, investigation and analysis function that Pinnacle Agency, Indiana Insurance and the other Defendants should have and that they are required to reasonably conduct under the Policy. Their actions and domination of the underwriting companies have caused it to breach the Policy by deliberately, unjustifiably and unreasonably withholding benefits, by adopting an unwarranted interpretation and application of the provisions and exclusions of the Policy, contrary to the facts and by failing to protect Plaintiff's reasonable expectations of coverage, including but not limited to refusing to timely, promptly, and without delay, pay for the property damage to Plaintiff thereby knowingly and intentionally causing extreme hardship to Plaintiff.

54.    Defendants have also deliberately, unjustifiably and unreasonably refused to attempt in good faith to make a prompt and equitable settlement of the claims under the Policy. Defendants have deliberately, unjustifiably and unreasonably failed to communicate promptly with Plaintiff.

55.    Defendants have deliberately, unjustifiably and unreasonably failed to provide documents, pictures, reports that have been used to make decisions in the matter thereby causing Plaintiff continued loss and hardship as well as causing Plaintiff to undertake this litigation.

56.    Defendants have also deliberately, unjustifiably and unreasonably compelled Plaintiff to institute litigation to recover amounts due under the insurance policies in an effort to further discourage Plaintiff from pursuing the full policy benefits; and Defendants have deliberately, unjustifiably and unreasonably refusing to reconsider their denial of coverage despite their lack of reasonable or diligent investigation and analysis regarding the bases for such coverage, and despite having received from Plaintiff information that established more than sufficient grounds to conclude that full coverage existed and continue to exist under the Policy.

57.    In interfering with Plaintiff's contractual relationship with Pinnacle Agency, the parent company, Liberty Mutual Insurance and Indiana Insurance, did not act for the sole purpose of protecting its legitimate business interest from being prejudiced. Rather, it acted for the illegitimate business purpose of reaping illicit gains due to its bad faith effort to cause Pinnacle Agency and the other Defendants to deny the insurance benefits to which Plaintiff was

12

entitled. It did not employ proper means to do so, but instead employed wrongful means of involving itself in the claims adjustment processes of its subsidiary and has acted in the express purpose and design of causing a breach of its obligations under the Policy it issued to Plaintiff. Liberty Mutual Insurance and Indiana Insurance therefore have directly caused and continue to cause a breach of its Policy obligations to its insureds, and have disrupted and harmed the contractual relationship between insurer and insureds that properly should exist under and by the terms and conditions of the Policy.

58.     As a direct and proximate result of Indiana Insurance and Liberty Mutual's tortious interference with Defendants' insurance contract with Plaintiff, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, as well as related expenses in an amount not yet fully ascertained.   The conduct described herein constitutes oppression, fraud or malice therefore Plaintiff is entitled to punitive damages in an amount to be proven at court.

## FIFTH CAUSE OF ACTION

(Unlawful, Unfair, or Fraudulent Business Act or Practice)

59.     Plaintiff specifically incorporates the preceding paragraphs as though fully set forth herein.

60.     Plaintiff is informed and believe and based thereon allege that the Defendants, in concert with its subsidiaries, has a bad faith corporate practice of withholding property damage policy benefits which Defendants know are due to their insureds. Defendants engage in this practice on the theory that, if an insurer denies most of their claims, the majority of insureds will abandon their claims after the denial, or take a lesser amount in settlement of the claims, rather than take on the prospect of litigating against their insurer. Defendants engage in this corporate practice in order to discourage claims and maximize profits.

61.     Defendants have engaged in unfair insurance practices and made it a pervasive part of their well-established, overall business plan. Defendants have therefore engaged in unlawful, unfair or fraudulent business act or practice, by their activities and their decision to discourage the pursuit of property damage claim.

13

62.     Defendants have been unjustly enriched in an amount as yet is unascertained, which will be determined according to proof at trial, but which includes their ill-gotten receipt from Plaintiffs based upon their payments of the Policy premium.

63.     Plaintiff has suffered concrete and substantial monetary harm directly as a result of defendants' conduct, including attorneys' fees as well as emotional and financial stress.

64.     Defendants' practice of denying this property claim offends established public policy, is immoral, unethical, oppressive, unscrupulous and so substantially injurious to consumers such as to constitute an unfair business practice. Plaintiff has suffered losses and request to be reimbursed in an amount to be proven at trial.

## Demand for Jury Trial

65.     Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this court enter a judgment for the Plaintiff and against the Defendants and find that they were negligent, have breached contractual relationship, and that Defendants have engaged in bad faith bargaining, and finds that the Plaintiff should be awarded financial compensation in the following manner:

a.     Award actual and compensatory damages;

b.     Award punitive and exemplary damage;

b.     Award pre-judgment interest award of damages from the date of breach;

c.     Award post-judgment interest;

d.     Award attorney fees and costs; and

e.     For such other and further relief as this court deems just and proper.

> FRENCHMAN VALLEY PRODUCE, INC.
> A Nebraska Corporation, Plaintiff
>
> / s / Randy Fair
> RANDY FAIR, #22351
> Dudden & Fair, PC, LLO
> PO Box 60 – 914 East A Street
> Ogallala, NE 69153
> 308.284.6061 – 308.284.2648 fax

14